# CHARLESTON.

## CABELL *v.* GIVEN.

Submitted January 12, 1888.—Decided February 11, 1888.

1. JUDGMENT—LIEN—APPEARANCE OF COUNSEL—FALSE APPEARANCE —STATUTE OF LIMITATIONS.

After a judgment has been recovered in a suit at law, the record in which shows that the defendants appeared by counsel and filed pleas, and a suit in equity has been brought to enforce the lien of said judgment, the defendants can not, after the said suit has been pending ten years, prevent the enforcement of said judgment, on the ground that they did not employ counsel to defend them in the action at law, and that the record of their appearance by counsel was false. (p. 768.)

2. FORTHCOMING BOND—LIEN.

A forfeited forthcoming bond has the force of a judgment, so as to create a lien upon the lands of the obligors, only from the time the bond was returned to the clerk's office. (p. 771.)

3. FORTHCOMING BOND—LIEN.

Where the only evidence of the time such bond was returned to the clerk's office was an indorsement as follows: "Notice proved and docketed in court, 10 October, 1868, and mo. to quash,"—such bond would have the force of a judgment from the date in said indorsement. (p. 771.)

4. FORTHCOMING BOND.

The requirement by the statute that the clerk of the court shall indorse on a forfeited forthcoming bond "the date of its return," is directory. (p. 771.)

5. FORTHCOMING BOND—HOMESTEAD.

Under chapter 29, Acts of 1864, a person recorded his declaration of "homestead." At the time he was an obligor on a forfeited forthcoming bond, which had been returned to the clerk's office. The homestead is subject to the lien created by the bond after its return, having the force of a judgment.

*J. M. Laidley* for appellants.

*J. F. Brown* and *H. C. McWhorter* for appellees.

JOHNSON, PRESIDENT:

In January, 1873, the plaintiffs filed their bill in the Circuit Court of Roane county to enforce the lien of their judgment against Adam Given, B. V. Given, and Isaac Jones. The bill alleges the recovery of the judgment at the June term, 1872, in the Circuit Court of Kanawha county, in the name of E. S. Arnold, survivor *etc.*, against the said defendants, for $647.14 and costs, to be discharged by the payment of $323.57 with legal interest from the 16th day of January, 1868, and the said costs *etc.*; that the said judgment was for the use of J. M. Laidley; that he assigned the same to the plaintiffs, Cabell & Dillard; that this judgment was founded on a forfeited forthcoming bond, executed by the said defendants on the said 16th day of January, 1868; that the defendant, Adam Given, is the owner of a tract of 50 acres of land, B. V. Given, a tract of 119 acres, and Jones, the undivided half of a lot in Walton, Roane county, also a tract of about fifteen acres in said county, and prays the enforcement of said judgment-lien against said lands *etc.*

On the 6th day of March, 1873, B. V. Given filed his answer to said bill, and, among other things, says: that he became security for his father on about the 16th day of January, 1868, together with his co-defendant, Isaac Jones, upon an undertaking for the delivery of property upon a debt of Arnold against this respondent's father; that so far as this respondent is concerned, said debt accrued at the date of said undertaking, and not before, and that said judgment grew out of said undertaking; that the said undertaking was obtained from him through fraud and false pretences by the agent of said Arnold, one A. Noyes; that long before the said undertaking was given, Adam Given was a bankrupt; that proceedings in bankruptcy had been instituted; and notice served on said Arnold, as to the original debt in controversy; and said Arnold and J. M. Laidley, in contempt of the said authority of the Federal Court, sent said Noyes, who claimed to be acting as deputy sheriff for Roane county, with an execution on said old judgment, which was for the use of J. M. Laidley; that said Adam Given informed said Noyes of the bankrupt-proceedings, and that said debt was included therein; that Noyes persuaded .the said Given to give the undertaking, and the respondent and said Jones to become sureties therein, by alleging and insisting that no possible harm could come to this respondent by signing the same.

The answer then sets forth that respondent is a husband and parent, and resides in this State, and that under the provisions of chapter 29, Acts of 1864, he had filed and recorded the deed under said act, designating the said 119 acres as a "homestead;" that is, he did this on the 27th day of March; 1869, and claims the said homestead as exempt under said act, *etc.* This is substantially all that is stated in said answer.

A reply in writing was filed to this answer by the plaintiffs which amounts to a general replication. On the 9th September, 1874, an amended bill was filed making other parties, the object of which was to get in the legal title to a part of the real estate, alleged to be owned by the defendant, Isaac Jones. This bill also alleges that the said bond, of date January 16, 1868, was returned to the clerk's office

from which the execution issued; that E. S. Arnold, survivor, *etc.*, appealed from a judgment dismissing said action, and the appellate court reversed the judgment and remanded the case in which plaintiff's judgment for $647.14 was afterwards rendered. In August, 1877, the said plaintiffs filed a second amended bill, in which they set up more specifically what was contained in the original bill. In this bill they say that the bond was forfeited on the first Monday in March, 1868, and was returned to the clerk's office from which the writ issued within thirty days from the time it was forfeited; that in December, 1868, the action was brought, and on the first Monday in January, 1869, the declaration was filed, "and the said bond was then and there again returned to said clerk's office." This bill also alleges that the homestead-deed was executed on the 27th of March, 1869, after the indebtedness of B. V. Given on the bond, and after the lien had attached, and that therefore the said deed is void as to the judgment. It also charges that said homestead-deed was made with intent to hinder, delay, and defraud the creditors of the said Given; and that it is a conveyance which is not upon consideration deemed valuable in law, *etc.* To this bill the defendants, Adam and B. V. Given, demurred.

An order was entered in the cause on the fourth day of September, 1878, showing the filing of the answer of Adam Given to the amended bill, and that it was replied to generally. No other order except continuances appears to have been made until the 27th day of August, 1884, when the defendant, B. V. Given, filed his answer to the amended bills, and Isaac Jones to the original and amended bills; and the plaintiff took time to object or reply thereto.

In addition to what respondent, B. V. Given, stated in his answer to the original bill, he has recollected and states that "Noyes asked respondent to sign the paper, which was not yet filled out, but in blank, fraudulently representing that respondent should never be affected by the signing of the paper. Respondent, having confidence at the time in the honesty of said Noyes, signed the blank paper, which Noyes said he would fill out with the conditions herein before referred to. Respondent did not acknowledge said signature,

nor never saw the said paper afterwards. But has since learned and charges that said Noyes inserted forged conditions and date in said paper." He had before said: "Noyes then requested, in order to indemnify himself, as he represented, the said Adam to sign a paper to the effect that said property would be safely kept by said Adam and delivered at the court-house of Roane county some time after, provided in the meantime said Adams did not get his discharge in bankruptcy."

This answer avers that the supposed bond was not his act; that it is vitiated by fraud and forgery. It further states, (after 11 years,) "that he never had notice of the alleged proceedings at law in Kanawha county against him and his co-defendants; that he never employed counsel in such case, and never authorized any one else to do so for him; that if any one else did so, it was without his consent, or knowledge, or subsequent ratification; for he had never had notice of the alleged action, by judicial process or otherwise, and so it would have been great folly in him to waive notice and put himself to the expense of a lawsuit gratuitously. He avers that there is no liability on the part of Adam Given, the principal in the bond, and therefore there can be none on his sureties, and that the discharge in bankruptcy of said Given inures to the benefit of respondent; that he is advised that the alleged forthcoming bond, not being taken on an execution, is a nullity as such, and had not the qualities or properties of such a statutory bond; that it is not true that said bond was ever returned to the clerk's office of Kanawha county, whence it issued, or that it was ever filed there. He denies that the homestead-deed was made with intent to hinder, delay, or defraud his creditors" *etc.*

Isaac Jones first appeared in this cause on the 6th day of September, 1877, when he demurred to the amended bill. This was nearly five years after the institution of the suit. He waited until the 27th day of August, 1884, nearly seven years longer, when he filed his answer to the original and amended bills. In his answer he says: That Noyes deceived him into signing the bond by telling him Adam Given, the principal, had taken the benefit of the bankrupt-law; that Noyes produced a writ of *venditioni exponas* is-

sued from the clerk's office of the Circuit Court of Kanawha county; that said Noyes claimed to be acting as the agent of J. M. Laidley, who he represented owned the said debt against Adam Given; that he pretended to sympathize with Adam Given, but said it was his duty to take a bond for his own protection, conditioned for the delivery of the property, to keep Given from squandering the property, but that Given would get his discharge in bankruptcy, and that would be an end of the whole matter; that being pressed, he signed a bond in blank, for the delivery of the property "at the March court of Roane county, 1867 or 1868," as respondent then remembered; that when the March court drew near, respondent engaged one James Frail to help deliver said property, but Noyes, to respondent's surprise, informed him the bond was then forfeited.

He further avers that said Noyes was not authorized to fill up the blank bond, but that he did so fill it up "with a false and forged date, and contained false and forged conditions, which respondent never agreed to;" that he heard no more of the matter for two or three years, and had forgotten it, when, to his surprise, some time in 1872 or 1873, an execution was presented to him purporting to have been issued upon a judgment recovered on said bond. He denies that he had any notice by service of process or otherwise of action on said bond; and avers that all the defendants in the action lived in Roane county, and cause of action did not arise in Kanawha county; denies that he ever employed counsel or directly or indirectly authorized any other person to employ counsel for him in any action on said bond in Kanawha county or elsewhere; denies that the record of said judgment shows that respondent was served with process, or appeared in said action; and, as proof of this, exhibits a copy of the judgment, which shows that "on motion of plaintiff he hath leave to withdraw his special replication to the defendant's special plea, and the plaintiff now demurs to the said special plea; and there being no appearance for the defendants, the court takes time to consider of the matters of law arising thereon." This was on the 10th day of July, 1872. On the 15th day of July, 1872, the order then states, "the court, on considering the matters of law arising on the

special plea of the defendants, doth sustain the demurrer thereto; and the plaintiff, being now entitled to a final judgment, it is therefore considered" *etc.*

The answer further denies that the respondent had any notice whatever of the alleged proceedings in the Supreme Court of Appeals, and avers that he has since been informed that the record was so garbled as presented to the Court, and, found to be so imperfect and wanting in legal requirements as to plaintiff's declaration and other parts of said record, that the judgment was reversed, and the case remanded, and that by reference to ·Exhibit " R," it will be seen that no appearance whatever was made either by Adam Given, B. V. Given, or the respondent in the action in Kanawha county, after the case was remanded to the court; and denies that Exhibits Nos. 1 and 2, filed with the bill, which show that the suit was against all these three defendants, were correct. The respondent also says that neither T. B. Swann nor J. S. Swann had authority to appear for him and sign his name to any plea, and that said appearance, if any was made, was a fraud upon his rights; that he would have appeared and defended his rights, if he had been served with process ; that he had a good defence *etc.*

The exhibits with the bill show that T. B. and J. S. Swann appeared for all the defendants and filed three special pleas to which their names are signed by counsel. The answer denies that said bond was returned to the clerk of the Circuit Court of Kanawha county, or was ever entered by him as an official paper ; and avers that said bond never was a lien on respondent's property, and never had the force of a judgment against him ; that by section 1 of chapter 189, Code 1860, the sheriff or other officer levying a writ of *fieri facias* or distress-warrant only could take such a bond as was taken by said Noyes; that the second section provides that if the condition of such bond be not performed the officer, unless payment be made of the amount due on the execution or warrant, shall within 30 days after the bond is forfeited return it with the execution or warrant to such court or the clerk's office of such court as is prescribed by the twenty-seventh section of chapter 49 ; that as a horse was ordered to be sold, the sale had to be made in front of the court-

house of Roane county. Id. ch. 49, § 38; that the condition of said supposed bond is for the delivery of the property at said Roane court-house, to be sold, not under a *fieri facias*, but under a writ of *venditioni exponas ;* that the bond in controversy is not in contemplation of law such a forthcoming bond, as may be made to have the force of a judgment under section 2, ch. 186, Code 1860; that the provision for giving a forthcoming bond the force of a judgment is in derogation of the common-law, and must be strictly construed, which was not done in this case; so that said bond never became a lien on the real estate of the parties who signed the same ; that such delivery-bond as might be taken under the writ of *venditioni exponas* is not such forthcoming bond as could create such lien, and would make a " case not specially provided for," and such bond should have been returned to the court by which Noyes was appointed or in which he qualified, to wit, the Circuit Court of Roane county. Section 27, ch. 49, Code 1860. He then says the debt was proved in bankruptcy-proceedings, which he says he will procure and file, " together with the discharge of said Adam Given in bankruptcy" *etc.*

There is an answer copied in the record which in the body of it purports to be the answer of B. V. Given, but is by counsel signed "Adam Given," and is sworn to by B. V. Given. There is no order filing this answer, unless it be regarded as the answer of Adam Given. It appears that it was sworn to on the 11th day of October, 1873. A *certiorari* was issued to bring up the answer of "Adam Given," in answer to which the Circuit Court of Roane county returns the original of this answer, and says if this is not the answer of Adam Given, then there is no answer of his in this cause. This answer denies the recovery of the judgment; denies the existence of the bond; denies that the bond was ever returned to the clerk's office of the Circuit Court of Kanawha county ; denies that any suit was ever brought on the bond; denies that the record of such action copied in this record is true ; denies that the homestead-deed was ever recorded before any debt or lien was in existence against him ; denies said homestead-deed was made to hinder, delay or defraud the creditors of plaintiff; denies that said deed is void

as to plaintiff's claim ; denies that it is a conveyance not upon consideration deemed valuable in law; and denies that plaintiff's claim was in existence when said deed was made. If this answer were or not a part of the record it would be immaterial, as all the points that could be considered, which it raises, have been presented by the other answers, on which the decree was in part based.

On the 27th day of November, 1885, the cause was heard on the original bill and on the two amended bills, upon the separate answers of said B. V. Given to the original and to each of said amended bills; on the answer of Isaac Jones to the original and amended bills; and on replication to each of said answers, and upon the deposition, exhibits, and proofs filed by defendants; also, upon the answers of the other defendants and replications thereto; and on consideration whereof the original and amended bills were dismissed as to the defendants, B. V. Given and Isaac Jones, with costs; and as to the other defendants the cause was retained. From this decree the plaintiff appealed.

It is strange that after the defendant, Isaac Jones, had made such reckless averments as to not being summoned to answer the action at law, and as to not employing or authorizing the employment of counsel to appear for him, he should be content in his deposition, without the slightest corroboration, to say, after speaking of the execution of the bond : " I never heard anything more about it until there was an execution come here from Kanawha county, and I was astonished and went clear to Charleston to see about it; and Swann, McWhorter *et al.* told me that he (Laidley) and his allies had taken an appeal to the Supreme Court. I then asked them if there was no redress for me at all. They said there was none." In answer to the question, if he had any notice of the case being taken to the Supreme Court, he answered, " None. It took me with astonishment when I heard it." B. V. Given in his deposition says not one word on the subject.

Whether under any circumstances, where fraud is clearly alleged and proved, whereby a judgment was recovered without service, and counsel appeared for such defendants without authority, a court of equity would set aside such judg-

ment, need not here be considered. Certainly such relief would not be granted upon the averments and proofs appearing in this record. The records of a court are too sacred to be thus trifled with. As to the bankruptcy of the defendant, Given, there is no proof, and that question will not here be considered. As to the alleged fraudulent representations of A. Noyes, by which it is averred the defendants were induced to sign the bond, nothing need be said, as there is no proof connecting the plaintiff with such representations. There is no sufficient proof of the charge that the bond was not filled up as agreed, even were that a proper subject of inquiry here. As to the defendant Jones, it can make no difference whether the bond was properly returned to the clerk's office, and thus was made to have the force of a judgment, or not, as the judgment in an action on the bond was afterwards recovered ·against him, and is a lien binding his real estate.

But how stands the case as to B. V. Given? It is claimed that the bond was never returned to the clerk's office, so as for that reason to have the force of a judgment. Section 2, ch. 189, Code 1860, which governs this case, provides: " If the condition of such bond be not performed, the officer, unless payment be made of the amount due on the execution or warrant, * * * shall within thirty days after the bond is forfeited, return it with the execution or warrant to such court, or to the clerk's office of such court, as is prescribed by the twenty seventh section of chapter forty nine. The clerk shall indorse on the bond the date of its return; and against such of the obligors therein as may be alive when it is forfeited and so returned it shall have the force of a judgment. But no execution shall issue thereon under this section." This is the same as § 2, ch. 189, Code of Va. 1849, p. 720; substantially the same as § 3, ch. 142, p. 675, Code 1868, and § 3, ch. 142, p. 875, Code 1887.

Section 9 provides that " upon the return of such bond to the clerk's office in the manner prescribed by the second section of this chapter, it shall be the duty of the clerk to indorse thereon the date of such return, and to record in a book to be kept by him for that purpose, the date of such bond, the amount of the penalty thereof, the amount the

97

payment whereof will discharge such penalty, and the names of the obligee and obligor to such bond. For which service the clerk shall be entitled to a fee of thirty cents; and such bond, when so returned to the clerk's office aforesaid, shall constitute a lien on the real estate of the obligor." This section was enacted in 1857–58, and applies to bonds taken by constables on execution issued by a justice. But I cite it to show that the Legislature in that case distinctly indicated when such forfeited bond should constitute a lien on the obligor's real estate. Section 16, ch. 134, Code 1819, vol. 1, p. 530, among other things, declared: "Such sheriff or officer shall return the bond to the office of the clerk of the court from whence the execution issued, to be there safely kept, and to have the force of a judgment."

In *Jones* v. *Myrick's Ex'rs*, 8 Grat. 210, Baldwin, J., said: "The *quasi* judgment, was like other judgments, to be deposited in the clerk's office, where it could be seen and inspected by all persons interested in the subject; whereas, if it took its force as a judgment lien from the time of the forfeiture, it might be held up to the great prejudice of creditors and purchasers for many years, and that by the act of the plaintiff himself; for by the seventeenth section of the same statute, it was made the duty of the sheriff to deliver the bond to the plaintiff, if required, and there was no period of limitation to the award of execution." The execution in this case, says Judge Baldwin, "was levied and the forthcoming bond taken on the 25th of October, 1827, and the bond forfeited on the first Thursday in December, 1827, and execution thereupon awarded by the court on the 28th day of April, 1828. The forthcoming bond must be regarded as returned on the 28th day of April, 1828, when the motion for award of execution was made upon it; there being no evidence that it was returned at an earlier day."

In *Lipscomb's Adm'r* v. *Davis's Adm'r*, 4 Leigh 305, Tucker, P., said: "The filing previous to the motion is not indeed essential to it, (*Eppes's Ex'rs* v. *Colley*, 2 Munf. 523;) but the bond must be filed when the judgment is given, and until filed it will not, I presume, have the force of a judgment. Were it otherwise, then newly-created judgments, instead of being deposited in a fixed and known office for ex-

amination and as notice to all concerned, would be ambulatory in the pockets of the plaintiffs or the sheriffs, to the great prejudice of executors and administrators who must look to them as debts of superior dignity, and to the entrapping of purchasers of lands of the debtor, or his sureties, which would be overreached by these judgments in ambuscade."

In *Land Co.* v. *Calhoun*, 16 W. Va. 361, it was held that " though the forthcoming bond be left at the clerk's office before it is forfeited, yet, if the property is not produced on the day of sale, the officer may have the clerk endorse it as filed in the office after the day of sale, and it will operate as a judgment as if actually returned to the office after the day of sale." The purpose of the statute is that such forfeited bonds, before they can have the force of judgments so as to create liens on the real estate of the obligors, must be returned to the clerk's office where they are filed for the purpose, as clearly appears by the statute, of giving notice to all persons interested therein.

In *Jones* v. *Myrick's Ex'rs, supra,* it was held that a forthcoming bond forfeited has the force of a judgment, so as to create a lien on the lands of the obligors, only from the time the bond is returned to the clerk's office; and where there is no evidence that it was returned to the clerk's office before the day on which there was an award of execution thereon by the court, it will be regarded as having been returned to the office on that day. At the time that decision was rendered the statute did not require that the clerk should indorse the date of the return on the bond.

By the Code of 1860, which governs this case, section 2 of chapter 189 provides : " The clerk shall indorse on the bond the date of its return; and against such of the obligors therein as may be alive when it is forfeited, and so returned it shall have the force of a judgment." The statute does not say that against such of the obligors as may be alive " when it is forfeited and so returned and indorsed by the clerk it shall have the force of a judgment," but the language is, " When it is forfeited and so returned." This clearly shows that the requirement that the clerk shall indorse the date of the return is directory, like the requirement that he shall

index the recordation of deeds. Therefore, when the bond was forfeited and returned to the clerk's office, if it was a good statutory bond, it had the force of a judgment against the obligors then alive.

When was the bond before us returned to the clerk's office? As the record shows, "by agreement of the defendants, the copy made by M. W. Ridd, clerk of this court, marked 'F. F.' as a copy of the original forthcoming bond, and the indorsement thereon mentioned in the case of Enos Arnold, survivor, etc., against Adam Given and others, in the Circuit Court of Kanawha county, is filed in this cause to be used in this cause as it might be if it were properly certified to be a true copy of said bond by the clerk of the Circuit Court of Kanawha county." Then follows the bond with the indorsement. The indorsement is as follows: "Notice proved and docketed in court 10 October, 1868, and mo. to quash." This means that a notice had been given to defendants that on the 10th day of October, 1868, the plaintiff would move for an award of execution on the bond; and that on that day the notice was proved as having been served, and the motion for award of execution docketed, and the defendants appeared and moved to quash. This shows clearly that the bond had been returned, and was then in the clerk's office, and from that day it had the force of a judgment against the obligors then alive, if the bond was a good statutory bond.

It is claimed it is not a good statutory bond, because it was taken on a *venditioni exponas*. The law (section 1, ch. 189, Code 1860) declares that "the sheriff or other officer levying a writ of *fieri facias* or distress warrant" may take from the debtor a bond, etc. The *fieri facias* had been levied, but the goods not sold. The return-day of the *fieri facias* was passed, and the *venditioni exponas* was nothing more than the authority to expose for sale the goods levied on under the *fi. fa.* It was a continuation of the *fi. fa.*, or rather the goods were to be exposed to sale by virtue of the levy of the *fi. fa.* The bond had been quashed by the court, and on writ of error this Court said, "it could find nothing in the record to warrant the judgment," and the judgment was reversed, and the case remanded. *Arnold* v. *Given*, 5 W. Va.

257. The bond was properly taken when the goods were about to be exposed for sale under the *venditioni exponas*. This bond then had the force of a judgment against the obligors, for they were then living, and was a lien on their real estate from the 10th day of October, 1868.

Was this judgment a paramount lien on the property of B. V. Given,—the 119 acres set apart as a homestead? It is not necessary to inquire into the validity of the homestead so set apart, if the judgment on the forthcoming bond is prior; for in this case it does not appear that there are any other liens on B. V. Given's property. The homestead deed or declaration was recorded on the 27th day of March, 1869. Section 7, ch. 29, Acts 1864, p. 18, provided that "a husband or parent residing in this State may hold as a homestead real estate not exceeding five hundred dollars in value, to be exempt from execution or other process, for any debt, contract, or liability incurred after the first day of June, 1864. " By section 8 of the same chapter it is provided, "but no real estate shall be exempted as aforesaid unless it is set forth in the conveyance by which the title is acquired, or in the will devising the same, that it is intended to be held as a homestead by the persons to whom it is thereby conveyed or devised; or unless, after the title is acquired, such intent is declared by writing, signed and acknowledged for record, by the owner, and duly admitted to record in the county wherein such real estate is situated; and such exemption, unless by devise, shall take effect only from the time the deed or writing setting forth or declaring the intent aforesaid is duly admitted to record in the proper county." Section 17 of the same act declares that "no exemption under this act shall affect or impair any prior liens on any real or personal estate, or any claim for the purchase-money thereof, or for work or labor performed as a domestic; nor shall anything in this act contained exempt any property from taxation, or from sale for taxes." Of course, by the very terms of the statute, taking the sections I have quoted, the writing designating the homestead was to have no effect until it was recorded in the proper county; and when recorded, it shall not affect prior liens, etc. We have seen that the forfeited forthcoming bond had the force of a judgment-lien on the real estate

of B. V. Given from the 10th day of October, 1868. His declaration of homestead was not recorded until the 27th day of March, 1869. So the judgment lien is not defeated by the homestead, but the homestead is liable to be subjected to the payment thereof.

The court erred in dismissing the bill as to the defendants, Isaac Jones and B. V. Given, and the decree is therefore reversed, and the cause remanded for further proceedings.

REVERSED. REMANDED.